**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

RYAN O'DELL,                                          :
                                                      :
                    Plaintiff,                        :     Civil Action No. 23-cv-2601
                                                      :
v.                                                    :     **COMPLAINT FOR VIOLATIONS OF**
                                                      :     **SECTIONS 14(a) AND 20(a) OF THE**
SUMO LOGIC, INC., JOSEPH ANSANELLI,                   :     **SECURITIES EXCHANGE ACT OF**
CHRISTIAN BEEDGEN, SANDRA                             :     **1934**
BERGERON, MARGARET FRANCIS,                           :
RANDY GOTTFRIED, JOHN D. HARKEY,                      :     **JURY TRIAL DEMANDED**
JR., TRACEY NEWELL, RAMIN SAYAR,                      :
and TIMOTHY YOUNGBLOOD,                               :
                                                      :
                    Defendants.                       :
--------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.       This is an action brought by Plaintiff against Sumo Logic, Inc. ("Sumo Logic or the

"Company") and the members Sumo Logic's board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed acquisition of Sumo Logic by affiliates of Francisco Partners Management, L.P.

("Francisco Partners").

2.       Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on March 24, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Serrano Merger Sub, Inc. ("Merger Sub"), a wholly owned direct subsidiary of Serrano Parent, LLC ("Parent"), will merge with and into Sumo Logic with Sumo Logic becoming s wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on February 9, 2023 (the "Merger Agreement"), each Sumo Logic stockholder will receive $12.05 in cash (the "Merger Consideration") for each Sumo Logic share owned. Merger Sub and Parent are both affiliates of Francisco Partners.

3.      As discussed below, Defendants have asked Sumo Logic's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Sumo Logic's stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants'

violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over Defendant by this Court permissible under

traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Sumo Logic stock and

has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Joseph Ansanelli has served as a member of the Board since

2013.

11.     Individual Defendant Christian Beedgen has served as a member of the Board since

2010 and is the Co-Founder and Chief Technology Officer of the Company.

12.     Individual Defendant Sandra Bergeron has served as a member of the Board since

2020.

13.     Individual Defendant Margaret Francis has served as a member of the Board since

2021.

14.     Individual Defendant Randy Gottfried has served as a member of the Board since 2019.

15.      Individual Defendant John D. Harkey, Jr. has served as a member of the Board since 2022.

16.     Individual Defendant Tracey Newell has served as a member of the Board since 2020.

17.     Individual Defendant Ramin Sayar has served as a member of the Board since 2014 and is the Company's President and Chief Executive Officer.

18.     Individual Defendant Timothy Youngblood has served as a member of the Board since 2022.

19.     Defendant Sumo Logic is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 855 Main Street, Suite 100, Redwood City, California 94063. The Company's stock trades on the NASDAQ Global Select Market under the symbol "SUMO."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.     <u>**The Proposed Transaction**</u>

22.     Sumo Logic provides cloud-native software-as-a-service platform that enables organizations to address the challenges and opportunities presented by digital transformation, modern applications, and cloud computing worldwide. It offers Continuous Intelligence Platform, a cloud-native, multi-tenant, and secure service that leverages to enable reliability and security of

cloud applications and workloads. The Company also provides observability solution, an out-of-the-box solution for managing their application reliability for cloud applications; and security solution that helps developers, security analysts, and security operation centers that detect threats, perform security analysis and forensics, and automate security responses to remediate against those threats for cloud applications. Sumo Logic was incorporated in 2010 and is headquartered in Redwood City, California.

23.    On February 9, 2023, the Company announced the Proposed Transaction:

> REDWOOD CITY, Calif., Feb. 09, 2023 (GLOBE NEWSWIRE) -- Sumo Logic (Nasdaq: SUMO), the SaaS analytics platform to enable reliable and secure cloud-native applications, today announced that it has entered into a definitive agreement (the "Agreement") to be acquired by affiliates of Francisco Partners, a leading global investment firm that specializes in partnering with technology businesses, for $12.05 per share in cash. The all-cash transaction values Sumo Logic at an aggregate equity valuation of approximately $1.7 billion.

> Under the terms of the Agreement, Sumo Logic stockholders will receive $12.05 per share in cash. This represents a premium of approximately 57% to Sumo Logic's unaffected closing stock price on January 20, 2023, the last full trading day prior to media reports regarding a possible transaction. Upon completion of the transaction, Sumo Logic will become a private company with enhanced ability to expand its market opportunity, innovate on its critical solutions, accelerate growth, and further its vision.

> "Since founding Sumo Logic in 2010, we have created a trusted, cloud-native, SaaS analytics platform for observability and security, enabling our customers to transform complexity into insights and accelerate their cloud transformation adoption," said Ramin Sayar, President and CEO of Sumo Logic. "Today's announcement represents a compelling outcome for our stockholders. We are delighted at the prospect of partnering with Francisco Partners in the next phase of Sumo Logic's journey."

> Added Chuck Robel, Lead Independent Director of the Sumo Logic Board of Directors, "The Sumo Logic Board conducted a thorough evaluation of strategic alternatives and spoke with a number of strategic and financial partners. The transaction with Francisco

Partners delivers a substantial premium and a compelling cash value to our stockholders. The Board unanimously determined that this transaction maximizes stockholder value and represents the best path forward for Sumo Logic and recommended that stockholders vote in favor of the transaction."

"Sumo Logic is ideally positioned to capitalize on the large and growing demand from enterprises for observability and security solutions," said Brian Decker and Evan Daar, Partners at Francisco Partners. "Its leading, cloud-native, analytics platform provides the scalability and insights required as applications and data proliferate in today's digital world. We look forward to partnering with Sumo Logic to drive accelerated growth and continue its long heritage of product innovation."

"We are excited to invest in Sumo Logic and support its mission to make the world's digital experiences reliable and secure," added Karl Shum, a Principal at Francisco Partners.

**Transaction Details, Approvals and Timing**

The transaction, which was unanimously approved by the Sumo Logic Board, is expected to close in the second calendar quarter of 2023, subject to customary closing conditions, including approval by Sumo Logic stockholders and the receipt of required regulatory approvals.

Upon completion of the transaction, Sumo Logic's common stock will no longer be listed on any public market.

**Advisors**

Morgan Stanley & Co. LLC is serving as sole financial advisor to Sumo Logic, and Wilson Sonsini Goodrich & Rosati, Professional Corporation is serving as legal counsel.

Kirkland & Ellis LLP is serving as legal counsel to Francisco Partners.

\* \* \*

24.    The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Sumo Logic's stockholders are provided with the material information that has

been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

25.      On March 24, 2023, Sumo Logic filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.      The Proxy Statement fails to provide material information concerning financial projections by Sumo Logic management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Sumo Logic management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope

to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metric: EBIT, EBITDA (Unburdened by Stock-Based Compensation), and Unlevered Free Cash Flow (Burdened by Stock-Based Compensation), but fails to provide line items used to calculate these metrics *and/or* a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

30.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31.     With respect to Morgan Stanley's *Public Trading Multiples* analysis, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for each company selected by J.P. Morgan for the analysis; and (ii) the inputs and assumptions underlying the representative ranges of AV/CY2023E Revenue of 2.0x –4.5x and AV/CY2024E Revenue of 2.0x – 4.0x.

32.     With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) the future-implied fully diluted equity value of Sumo Logic as of February 8, 2025; (ii) the Company's future net cash estimate; (iii) the estimated future diluted shares outstanding of Sumo; (iv) the inputs and assumptions underlying the discount rate of 13.1%; and (v) the cost of equity of the Company selected by Morgan Stanley.

33.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value for the Company; (ii) the inputs and assumptions underlying the discount rates ranging from 12.1% to 14.1%; (iii) the weighted cost of capital of the Company; (iv) the net cash of the Company as of February 3, 2023; and (v) the net present value of net operating losses of the Company.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

34.     With respect to Morgan Stanley's *Precedent Transactions Multiples Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each transaction selected by Morgan Stanley for the analysis; and (ii) the inputs and assumptions underlying the representative ranges for the ratio of aggregate value to the estimated NTM Revenue of 3.0x to 7.0x.

35.     With respect to Morgan Stanley's *Illustrative Precedent Transactions Premiums* analysis, the Proxy Statement fails to disclose: (i) the technology transaction selected by Morgan Stanley for the analysis; (ii) the premia paid in those transactions; and (iii) the basis for selecting the representative range of premia.

36.     With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets* analysis, the Proxy Statement fails to disclose: (i) the equity research analysts observed; and (ii) the public market trading price targets for the shares of Sumo Logic common stock prepared and published by the equity research analysts.

37.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do

carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

43.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of Sumo Logic within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Sumo Logic, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Sumo Logic, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Sumo Logic, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

48.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.    Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.    Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.    Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.    Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 28, 2023

MELWANI & CHAN LLP

By:  /s/ Gloria Kui Melwani
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*

14